UNITED STATES *v.* LONG.

*(Circuit Court, S. D. Georgia, E. D.* February 5, 1887.)

1. FORGERY—DEFINITION.
   Forgery is the fraudulent making or alteration of a writing, to the prejudice of another man's right.

2. SAME—INTENT.
   In order to find the intent to defraud a particular person, it is not necessary that there should be evidence to show that the accused had that particular person in contemplation at the time of the forgery. It is sufficient if the forgery would have the effect of defrauding him.

3. SAME—SIMILAR NAME.
   One may be guilty of forgery if he fraudulently signs his name, although it is identical with the name of the person who should have signed.

4. POST-OFFICE—MONEY-ORDER—IMPERSONATION OF PAYEE—EVIDENCE.
   If the accused falsely represented himself to be the payee of the money-order, it is a circumstance tending to impeach his good faith, and such misrepresentation may be as well effected by acts as by words. Thus, if he presented himself before the paying official, and, presenting the order, signed it as if he were the person for whom it was intended, he as well defrauds as if he had declared himself to be the payee.

5. CONFESSIONS—CONTRADICTING.
   If the prosecution relies on the confession alone, the prisoner is entitled to the full effect of a portion of the confession which goes in his favor; but the prosecution may contradict by evidence such portion of the confession, and the jury may convict, notwithstanding it, if all the evidence taken together warrants that finding.[1]

*(Syllabus by the Court.)*

Indictment for Forging Signature on Money-order.
*Dupont Guerry,* U. S. Atty., for the Government.
*James Atkins,* for prisoner.

SPEER, J., *(charging jury.)* A useful, and indeed an essential, branch of the postal service of the government is the transmission of funds by means of "money-orders." The law provides that, to promote public convenience, and to insure greater security in the transfer of money

[1] Respecting admissibility of confessions, see Hoober v. State, (Ala.) 1 South. Rep. 574, and note; U. S. v. Bassett, (Utah,) 13 Pac. Rep. 237, and note. Respecting the sufficiency of confessions and admissions, U. S. v. Bassett, *supra,* and note; State v. Penny, (Iowa,) 30 N. W. Rep. 561.

through the mails, the postmaster general may establish and maintain, under such rules and regulations as he may deem expedient, a uniform money-order system at all suitable post-offices. A money-order is an order for a specified sum of money, not less than one cent nor greater than fifty dollars, made out at a money-order office, on a blank form prescribed by law and the post-office regulations, and payable at some other money-order office. The person who purchases the money-order is known as the remitter, and the person to whom it is payable as the payee. A money-order is issued along with what is termed in the postal service a letter of advice. This is a letter or notice, partly printed and partly written, bearing the same number and date as its corresponding money-order, and is issued to the paying postmaster, for the purpose of informing the latter as to the name and residence of the remitter and the payee of the order. It is used to assist the paying postmaster in the identification of the payee of the order. You will have in evidence a specimen of the papers, and you already understand their nature. To protect the integrity of its money-orders, the following statute has been enacted by the government:

"Any person who shall, with intent to defraud, * * * forge * * * any order in imitation of or proporting to be a money-order issued by the post-office department; or any of its postmasters or agents, or any material signature or indorsement thereon; * * * any person who shall, with intent to defraud, pass, utter, or publish * * * as true any such false, forged, or altered money-order, knowing the same, or any signature or indorsement thereon, to be false, * * * shall be punished by a fine of not more than five thousand dollars, or by imprisonment at hard labor for not less than two years, and not more than five years."

And the accused is charged by indictment with the violation of this law. There are two counts in the indictment; the first charging the forgery of a material signature,—that of John G. Long, the payee of the order,—and the other charging that the prisoner, with intent to defraud, passed the forged money-order, knowing the same to be forged. The prisoner pleads not guilty, and thus is formed the issue which you are trying. You will attend, gentlemen, to the instructions of law which I will now give you.

Forgery is defined by Sir William Blackstone to be the fraudulent making or alteration of a writing, to the prejudice of another man's right. 4 Comm. 247. In order to find the intent to defraud a particular person, it is not necessary that there should be evidence to show that the accused had that particular person in contemplation at the time of the forgery. It is sufficient if the forgery would have the effect of defrauding him. Roscoe, Crim. Ev. 505. In the case of a paper like this, if there is sufficient proof that the paper has been forged, and the question is, who did the forgery? a strong presumption necessarily arises against the party in whose favor the forgery is made, or who has the possession of it, and seeks to derive benefit from it. One may be guilty of forgery if he fraudulently signs his name, although it is identical with that of the person who should have signed. Thus, if a bill of exchange is payable to A. B., or order, and it comes to the hand of a

person named A. B. who is not the payee, and who fraudulently indorses it for the purpose of obtaining the money, this is a forgery. To apply to this case: If this money-order had been payable to John A. Long, and it came by mistake of the mails or otherwise to the hands of the prisoner, John A. Long, who, knowing it was not intended for him, but for another John A. Long, indorsed it, or signed the receipt for it, with the fraudulent purpose to get the money on it, he would be guilty of forgery. Much more, then, would he be .guilty if he fraudulently signed the name of John G. Long. This fraudulent purpose may be sufficiently proven by his acts; and if the facts are sufficient to put him on notice of the fact that the money-order was intended for another, and not for him, then the consequence of his act is to defraud the other; and one is presumed to intend the consequences of his own acts. If the accused falsely represented himself to be the payee of the money-order, it is a circumstance tending to impeach his good faith, and such representation may be as well effected by acts as by words. Thus, if he presented himself before the paying official, and, presenting the order, signed it as if he were the person for whom it was intended, he would as well defraud as by declaring that he in truth was the payee. While the guilty knowledge of the accused must be clearly shown to the satisfaction of the jury, it is not absolutely necessary that there be positive evidence, provided it is clearly shown from the facts and circumstances of the case. Nevertheless it must be satisfactory to the jury.

If the prosecution relies on the confession alone, the prisoner is entitled to the full effect of that portion of the confession which goes in his favor; but if there is other evidence upon which the prosecution can with justice insist upon a conviction, the jury may, if they think proper, convict, notwithstanding the confession alone would be insufficient. In other words, if the prosecution uses the declaration of the prisoner, the whole of it must be taken together. One part cannot be selected, and the other left; and if there be no other evidence incompatible with it, the entire declaration of the prisoner must be taken as true. But if, after the whole of the statement of the prisoner is in evidence, the prosecution is in a situation to contradict any part of it, it is at liberty to do so, and then the statement of the prisoner, and all the other evidence, must be left to the jury for their consideration, precisely as in any other case, when one part of the evidence is contradictory to another. Roscoe, Crim. Ev. 55.

In all criminal cases the burden is upon the prosecution to produce such evidence as will satisfy the jury that the charge against the accused is true,—such evidence that, when the jury has considered it, and all the rest of the evidence, there will remain no doubt (for which a sensible reason can be given) that the accused is guilty. After fairly considering the evidence, if there remains a reasonable doubt upon the evidence, or because of the want of evidence about the guilt of the accused, he is entitled to his acquittal. If, on the other hand, the evidence is of that character that a conscientious and sensible man may be satisfied that the prisoner is guilty, it is the duty of the jury to find him guilty.

I will now, gentlemen, briefly sum up the facts in evidence for your assistance.

It is in proof that on the twenty-fourth of November, 1885, Mr. Dewhurst, postmaster at St. Augustine, issued this money-order for Annie Benide, for $5.50; John G. Long, the mayor of St. Augustine, who was then in Savannah, being the payee. The usual letter of advice was issued, and reached the postmaster at Savannah.. With the money-order was inclosed a letter, directed to Mr. Long, reminding him of the promise he had made to assist Annie Benide's daughter, who was, it seems, then in jail in Savannah, and requesting him to appropriate the money for the benefit of the latter. There was also inclosed this written order:

"ST. AUGUSTINE, FLA.

*Mr. Samuel Osbon*—DEAR SIR: You will oblige me, Mrs. Bendee, by giving Mr. Long that 17$ I sent, he going to look out for my daughter for me.
MRS. BENDEE.

Indorsed: "SAMUEL OSBON, 76 South Broad St., Savannah, Ga. In care Dr. Dunkin."

John G. Long was requested also to collect this order, and appropriate the proceeds for the benefit of Annie Benide's daughter. John G. Long never received the letter or its inclosure. It was delivered at the house of John A. Long, the accused, and to the wife of the accused. She thereafter delivered it to her husband, and he kept the letter by him for some time,—three weeks or a month,—and then turned the written order over to one Pennington, and the accused himself presented the money-order to Mr. Black, the assistant money-order clerk, and collected the money on it. The name of John A. Long, changed to John G. Long, is signed to the receipt on the money-order.

I charge you, gentlemen, that the signature to a receipt on a money-order is a material signature, in the meaning of the law. John A. Long testifies that he signed the receipt in his own name. He did not, he says, put the G. there. Mr. Black, the money-order clerk, testifies that he remembers the person who presented the money-order; but he is not able to identify Long as that person. Long testifies that he was the person who presented it; and Mr. Black testifies that he said to that person: "The letter of advice directs the money to be paid to John G. Long, and I cannot pay it to you unless you change the signature from John A. to John G.," and that the person who presented the order then made the change in his presence, and stated to Black that he was the person to whom it belonged.

Now, on this evidence, with the rest of the evidence, you must say on your oaths whether the accused fraudulently wrote the signature, John G. Long, with the intent to defraud John G. Long, and did he pass the money-order so fraudulently changed, or did he do either. He tells you he thought the letter and the money-order were for him. If he honestly thought this, and presented it in good faith, you must acquit him, because the crime requires guilty knowledge. You will look to all the facts, and examine the truth of that statement. Did he know Annie

Benide? Had he promised to assist her daughter? The letter inclosed put him on notice that the payee of that money-order knew Annie Benide, and had made her such a promise. Did he keep the money-order nearly a month before he presented it? He testifies he made no attempt to restore the money when he found for whom it was intended until after his arrest. He says he knew a Mrs. Bender who had a daughter, and who had gone to Florida; but his evidence is silent as to any promise made Mrs. Bender. His wife testifies she thought the letter was his, because of its reference to a woman and her daughter. Although the reference seems to have been entirely innocent, she, because of jealousy, at once severed all marital relations with him, and has not lived with him since. And another witness, Brindle, testified somewhat to the same effect. Whatever may have been the opinion of Mrs. Long, Long himself knew the facts; and it is his knowledge, and not hers, that is material. And, indeed, when it was developed on the committal trial that the letter came from an old colored woman, in distress on account of her daughter, who was in jail, it is difficult to understand why, the cause of the wife's suspicion having been explained, a reconciliation did not take place if the letter was the true cause of the estrangement. But this is not important. Is it reasonable that Long could have supposed the letter and money-order was for him? If it is, you should acquit him. If it is not, you should convict him, if you also believe he signed the name of John G. Long with the intent to defraud the latter.

There is evidence to the effect that Long, the accused, cannot read or write. He himself testifies that he can write his name. The effect sought by this evidence is to satisfy the jury, if you find he did sign and appropriate as charged, that he did not have intelligence enough to know that he was signing another man's name, and appropriating another man's money. In determining this, however, you will look to all the facts, and to his bearing and testimony as a witness, and then say whether he possesses sufficient intelligence to know that he was doing wrong. So far as ignorance of the law is concerned, that is no excuse for crime, and therefore is no proper subject for your consideration.

In conclusion, gentlemen, I charge you that you must be satified that the accused is guilty on both or one of the counts of this indictment before you can properly convict him. I have told you he is entitled to the benefit of a reasonable doubt, if there be one on your minds. This is no license to acquit. It is such a doubt as a prudent man would weigh and act upon, or decline to act upon, in his own affairs. In view of the evidence, are you satisfied he did it, and did it as charged? If yes, you ought to convict him; and if no, you ought to acquit him. If you find him guilty on both counts, you will say: "We, the jury, find the defendant guilty." If you find him guilty on one count, you will specify the count in your verdict. If you find him not guilty, you will say: "We, the jury, find the defendant not guilty."

NOTE. The prisoner was convicted, and a motion for a new trial was overruled.