### HARGROVE v. UNITED STATES.
### No. 6943.

Circuit Court of Appeals, Fifth Circuit.
Dec. 7, 1933.

B. D. Tarlton and L. Hamilton Lowe, both of Corpus Christi, Tex., for appellant.

W. R. Smith, Jr., U. S. Atty., of San Antonio, Tex.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Charged in four counts with willfully failing to make and file a return of income for the years 1928 and 1929, and with willfully and knowingly attempting to defeat and evade the payment of income taxes for those years,

Hargrove was convicted on them all. On this appeal he makes three points against his conviction, all turning on the matter of his willfulness: (1) That because of the failure of the proof in this respect, he should have had an instructed verdict; (2) that his statement, offered by the government, contained exculpatory statements which made it error to refuse his requested charge on their effect; and (3) that there was error in refusing the special charge he asked to the effect that willfulness, as used in the act, Revenue Act 1928, § 146 (26 USCA § 2146), implies a criminal intent, a knowledge and purpose to do wrong, and that unless the jury found plaintiff's failures to return and pay to have been with such intent, they must acquit him. A brief statement of the case made by the evidence will make the points clear and lead to their just determination.

In the years in question Hargrove was a county commissioner of Edinburg county; he was also a man of some affairs in the Valley section of Texas. Coming to the border country first in Starr county in early youth, more than thirty years before, he had worked in various positions, engaged in various occupations. At first, though having little education himself, he had taught the rudiments in a little Mexican school, then worked as deputy collector of customs, resigning that position in 1902 or 1903. In 1905 he had come to Hidalgo county, where he had been variously engaged in wood contracting and in the gravel business, but principally in the cattle business. At one time he was chairman of the board of the Mission Bank, and besides having been county commissioner, he was at one time county tax collector. In 1928 and 1929, though in each of these years, in addition to his exempt salary of $200 a month as commissioner, he had received items of income which were taxable aggregating several thousand dollars, on account of which he owed a substantial tax, he neither made a return of his income nor paid any tax for those years. For his defense he relied entirely on his lack of willfulness and wrongful intent, to which he testified at length. Admitting freely both in the statement he gave the income tax officers before the prosecution was begun, and on the stand, that he had received taxable income and that he had failed to report it or pay taxes on it, he persistently asserted both in the statements he gave and on the stand that, ignorant of his duty to file the return and pay, he had not acted with corrupt intent to avoid the payment of the tax or any duty he owed. Over and over again he affirmed that he had had no disposition not to

make the return or pay the tax; that he would have done both had he known they were due to be done; and that the sole reason he had not done them was because he did not know he was under that obligation. He testified that he understood and had been told that he was not required to make a return, and that he owed no tax, and that he in good faith believed this to be so.

As to some items paid him by one A. Y. Baker, he testified he had been told by Baker that these items were taxable to Baker, and not to him; that Baker had paid on them and he need make no return of them, and that one Pate, an income tax expert, had confirmed this. As to other items, though he now admits that their receipt by him has been shown, he testified that he kept no books on his cattle and other business and that he has no recollection of ever having received them. That since the records show that he did receive them, he does not deny them, but he does say as to them, that he did not willfully and consciously refuse to return and pay the taxes on them. That the failure to return and pay on them was due to oversight, and his lack of knowledge of what was due from him. That as to some of the items he had been told that they accrued as income in later years and he had paid the taxes on them in those years, while as to others, his failure to pay was due to pure oversight.

Without further detail, it may be said of his testimony that though not very convincing, it did tend to show that not willfully, deliberately, and with corrupt intent, but ignorantly, through lack of information and through inadvertence, he had failed to make his returns and pay the tax, and that if believed, it would completely meet and overcome the charges of willful violation if defendant is right in the view he took that to be willful there must have been more than a failure to make returns and to pay taxes; the failure must have been with corrupt and criminal intent.

█ The government on its part, entirely independently of and in addition to Hargrove's admission, proved the receipt by him of a considerable taxable income, and his failure to report and pay taxes on it under circumstances amply sufficient to easily support a finding that these failures were willful; that is, with corrupt and criminal intent. There is nothing, then, of substance in defendant's first point, that the verdict should have been directed in his favor. U. S. v. Commerford (C. C. A.) 64 F.(2d) 28; O'Brien v. U. S. (C. C. A.) 51 F.(2d) 193.

█ Did the court err to his prejudice, as claimed in his second point, in refusing to give the charge he asked on the effect of his exculpatory statements? We do not think it did. Too abstract in form, too deficient in pointing out the part of the long statement offered which was to be taken as exculpatory, and therefore calculated only to confuse and mislead the jury, it was for that reason alone properly refused. Besides, had it been specific enough, its refusal would not have been error. Here the prosecution did not rely alone, or even mainly, on the defendant's statements for conviction. It made out its own case by independent proof. The defendant took the stand on his own behalf, and amplified and reiterated what he had said in his statements as to absence of wrongful motive and intent. If in such a case, his defensive theory arising from his own testimony and coinciding with the exculpatory theory advanced in the admission had been fairly submitted to the jury, that would have been enough. A specific charge on the effect of exculpatory statements, is not demanded, even under the rule in Texas. McKinley v. State, 104 Tex. Cr. R. 65, 282 S. W. 600; Tate v. State, 116 Tex. Cr. R. 340, 31 S.W. (2d) 453; Servina v. State, 109 Tex. Cr. R. 443, 5 S.W.(2d) 510; Jones v. State, 29 Tex. App. 20, 13 S. W. 990, 25 Am. St. Rep. 715; Casey v. State, 54 Tex. Cr. R. 584, 113 S. W. 534, 536; Slade v. State, 29 Tex. App. 381, 16 S. W. 253, 254; McKinney v. State, 48 Tex. Cr. R. 402, 88 S. W. 1012, 1013; U. S. v. Long (C. C.) 30 F. 678. It remains only to inquire whether the defendant did have his defensive theory correctly and fairly submitted. When, inquiring in that regard, we come to the error mainly relied on, the failure of the court to give defendant's requested charge on willfulness, we find that he did not. Here is no immaterial oversight on the part of the judge, no quibble with words whose meaning is not well understood. The point of difference between court and counsel for the defense as to what was necessary to a conviction was fundamental. Defendant was all along insisting that not the act of failure to file the return and pay the tax, but the specific intent as regards the corrupt and criminal motive with which the act was done, made the offense; the court insisting that it was the act itself. Early in the case, while the evidence was coming in, this difference came sharply up. It persisted to the end. It caused the court to refuse defendant's requested charge, and to give in effect the contrary of it, by charging that if defendant failed to make his return and failed to pay

his tax when it was due, this failure must be deemed in law to have been willful.

The record, page 137, shows this colloquy:

"Mr. Tarlton: Under the decisions, as I understand them, applicable to this character of case, the defense and only defense to the failure to file a return on money received is whether or not there was willful failure. If the defendant received advice from counsel and acted on that advice in good faith, he is not chargeable with criminal failure.

"The Court: I don't know about that. A great many people are in the penitentiary who got bad legal advice, and if they willfully do a thing constituting violation of law it makes no difference whether they mean to violate the law. The violation lies in willfully doing the thing. I may be very innocent in what I am doing, but if I intend to do it and violate the law, I am guilty.

"Mr. Tarlton: The element of willfulness is defined by authorities—

"The Court: It lies in the distinction between the purposeful doing of the thing and the doing of the thing by inadvertence, or not intending to do it by accident.

"Mr. Tarlton: The term 'willful' comprises both a knowledge and an intention to do wrong. If the defendant has—

"The Court: He may not think he is doing wrong, yet he may willfully do a thing that constitutes a violation of the law. My idea is that if a man knows he has over $5000 and knows he has not filed an income tax return and does not intend to file an income tax return, then he has done it willfully, and if he is relying on his interpretation of some law, then he does that at his risk.

"The Court: If I do something accidentally, or something that I did not intend to do that constitutes violation of the law, why then the element of intent or willfulness is lacking. But as I understand the criminal statutes it is the willfully doing of the thing that you intend to do that makes you guilty, even though you do not think you are violating the law."

▮▮▮ In the light of this colloquy, the failure of the court to give the charge requested,[1] and

---

[1] "Gentlemen of the Jury: The essential element to the commission of the offense charged in each of the counts of the indictment is the willful failure of the defendant to make an income tax return as required by law for the years 1928 and 1929. The term 'willful' implies on the part of the defendant a knowledge and a purpose to do wrong.

"You are therefore instructed, and unless you find in the evidence beyond a reasonable doubt that the defendant failed to make an income tax return as required by law, and that such failure was with knowledge on the part of the defendant that he was

his charging as he did, is not only significant of, it leaves no doubt as to, what he intended to charge, and what he did charge. We quote from this charge:

"Another element of the offense, in both instances, is the matter of willfulness. That of course is largely a matter of intention. The word 'intent' in this connection means that general intent which always arises as a matter of law when some one willfully or intentionally. does that which is unlawful. * * *

"Ignorance of the law, of course, gentlemen, is not excused. The question of willfulness and intent rests, then and depends upon whether you find that the defendant willfully and knowingly did what he intended to do * * * A man may have no intention to violate the law and yet if he willfully and knowingly does a thing which constitutes a violation of the law he has violated the law."

The court here fell into the error of not distinguishing between the elements of an offense, where the statute simply denounces the doing of an act as criminal, and where it denounces as criminal only its willful doing. In the first class of cases, especially in those offenses mala prohibita, the law imputes the intent. Landen v. U. S. (C. C. A.) 299 F. 75; U. S. v. Balint, 258 U. S. 250, 42 S. Ct. 301, 66 L. Ed. 604. Had the prosecution here been under such a statute, the charge of the court would have been unexceptionable. In the second class of cases, a specific wrongful intent, that is, actual knowledge of the existence of obligation and a wrongful intent to evade it, is of the essence. Potter v. U. S., 155 U. S. 438, 15 S. Ct. 144, 39 L. Ed. 214; Felton v. U. S., 96 U. S. 699, 24 L. Ed. 875; Spurr v. U. S., 174 U. S. 728, 19 S. Ct. 812, 43 L. Ed. 1150; Townsend v. State (Tex. Cr. App.) 51 S.W.(2d) 696, 701; Foster v. U. S. (C. C. A.) 256 F. 207; Bentall v. U. S. (C. C. A.) 262 F. 744; Murdock v. U. S. (C. C. A.) 62 F.(2d) 926; O'Brien v. U. S. (C. C. A.) 51 F.(2d) 193; U. S. v. Praeger (D. C.) 149 F. 474.

Defendant's requested charge contains some inaccuracies, some inadvertences. It, however, sufficiently called the court's atten-

---

required to make such return and such failure to file the return was with the intention to evade and defraud the Government, you will acquit the defendant; or, if you have a reasonable doubt of the knowledge on the part of the defendant of his duty to make such return and the intention on the part of the defendant to evade the payment of the tax, you will acquit the defendant and so say by the verdict."

824

tion to the law of the case; the refusal to charge its substance was error.

For this error the judgment is reversed, and the cause remanded, for further proceedings not inconsistent with this opinion.