HAIGLER v. UNITED STATES.

No. 3735.

United States Court of Appeals
Tenth Circuit.

Feb. 9, 1949.

BRATTON, Circuit Judge, dissenting.

Ralph Carr, of Denver, Colo., for appellant.

Henry E. Lutz, of Denver, Colo. (Max M. Bulkeley, of Wray, Colo., on the brief), for appellee.

Before BRATTON, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The appellant, Burt E. Haigler, appeals from a conviction and sentence for wilfully, knowingly and unlawfully attempting to defeat and evade his income tax liability for the calendar year 1941, by filing or causing to be filed a false and fraudulent return in violation of Section 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b). The principal, and we think decisive, question here is whether the trial court erroneously excluded proffered testimony tending to negative any wilful intent to defeat and evade his income tax liability.

Wilfulness being an essential element of the offense charged, evidence showing or tending to show lack of it, is a defense, and is admissible for that purpose. See Dearing v. United States, 10 Cir., 167 F.2d 310; One 1941 Buick Sedan v. United States, 10 Cir., 158 F.2d 445; Hargrove v. United States, 5 Cir., 67 F.2d 820, 90 A.L.R. 1276; Annotation 90 A.L.R. 1280. We have said that where, as here, motive or bad purpose is an essential element of the offense charged, the accused may not only directly testify that he had no such motive or purpose, but he may, within rational rights, "buttress such statement with testimony of relevant circumstances, including conversations had with third persons or statements made by them, tending to support his statement * * *." Miller v. United States,

10 Cir., 120 F.2d 968, 980. See also Underhill's Criminal Evidence, 4th Ed., Sec. 138.

The proof in support of the indictment was to the effect that the appellant is a rancher and sheepman living near Monte Vista, Colorado, where he operates a large sheep ranch, and about 2000 acres of irrigated land. As a part of his ranching activities, he also grazes large herds of sheep in Eastern Colorado and Western Kansas. During the year 1941, he received approximately $19,000, which he did not include in his income tax return for that year. Approximately $15,000 of this amount was the proceeds of the sale of some old ewes, some with lambs, then on pasture in Western Kansas. This money was deposited in the Beaty Bank at Manzanola, Colorado, where he had never previously done any banking business. $2,114.82 was represented by a check dated October 13, 1941, for sheep sold in Kansas City, which was not deposited in the First State Bank of Alamosa, where he usually did business, until February 19, 1942; a check in the sum of $171 for pelts; another for $450 for sheep; and another check for $78.33, which he cashed and did not deposit. The proof showed that this additional income, together with the returned income of $30,001.99, would increase his tax liability for the year 1941, approximately $10,000.

For the purpose of showing intent and motive, the government also introduced evidence to the effect that appellant failed to include $6,780 of his income for 1939 in his return for that year, and that this sum, in the form of a check, had likewise been deposited in a bank where he was not accustomed to doing business.

Cross-examination of government witnesses developed the fact that in the Fall of 1941, appellant purchased approximately $13,000 worth of young sheep, giving a check therefor on his account in the Beaty Bank; that some time in April or May of 1942, after his income tax return had been prepared and filed, he told Mr. Carter, his accountant, on the streets of Monte Vista, that he had about $5,000 in a bank in the Arkansas River Valley which he had not reported; that Carter then told him it would make a material difference in his tax

liability, and that he should file an amended return; that because of the press of business in Colorado Springs, he did not have time to make it, but if appellant would furnish the data, he would amend the return, and that the appellant agreed to do so.

Carter further testified that he spoke to a deputy collector concerning it, and asked him to prepare an amended return when the information was available, but that no information was furnished to him by Haigler until the Fall of 1942, and no amended return was filed. He also testified that he did not know of the $2,114.82 check until he came to prepare the return for the taxable year 1942, and did not include it in the 1942 return because it was not income for that year. On cross-examination, counsel for the appellant sought to elicit from the internal revenue agents, Haigler's explanation to them for not having returned the income in question. The government objected to this inquiry on the grounds that Haigler was seeking to prove his "side of the story by government witnesses."

From cross-examination of government witnesses, and from questions asked of defense witnesses, it is plain that the theory of the appellant's defense was that he understood, and that it was generally understood among sheepmen, that if an old herd of sheep was sold and replaced in the same year with a new herd, the taxable income was the difference between the sale price of the old herd, and the purchase price of the new; that he called to the attention of his auditor the balance of approximately $5,000 in the account about thirty days after his income tax return had been filed, and that he understood or was led to believe, that it would be reflected in an amended return. Counsel for the appellant insisted that this testimony was admissible for the purpose of showing his lack of intent to defeat or evade his income tax liability.

The court, however, sustained objections to any testimony concerning his understanding of the law applicable to his income tax liability, on the grounds that his intent would be judged by his acts, and not by what he understood to be their consequences. In sustaining objections to repeated efforts of counsel to show the appellant's un-

derstanding of his tax liability for the transactions involved, the court made it undeniably plain that appellant's understanding of the applicable law was no defense; that "everybody is on notice of what the law is, and ignorance of the law is no excuse, as you know."

■ Unconvincing as it may be, this testimony was plainly admissible as bearing upon the essential element of intent to commit the offense charged, and we think it was error to exclude it.

The appellant was permitted to testify that he reported the $5,000 balance in the Beaty Bank to his auditor, who told him that it would be necessary to make a "supplemental return," and that later in the summer, when he again mentioned it, Carter told him that he had reported it to Mr. Admire, a deputy collector, who would "make out the assessment." He further testified that the check for $2,114.82 received in October of 1941, and not deposited until February 1942, had been misplaced in an old billfold which he had quit using, but that he did not knowingly fail to deposit it during the year in which it was received for the purpose of evading payment of income tax thereon. He was also permitted to testify that although he received, cashed, and did not report, the other checks involved, he had no purpose or intent to evade the payment of income taxes. He was permitted to testify that in his interviews with the revenue agents during their investigation, he told them that he had deposited the proceeds of the sale of the old ewes in the Beaty Bank to keep it separate from his other accounts, so that he could use it to replace the old ewes with young ewes in the fall, and that he considered this transaction merely a "trade," for which there was no tax liability.

■ Thus, appellant was permitted, indirectly, to adduce the theory of his defense by stating what he had told the investigators in explanation of his acts. But this bit of testimony did not change the theory upon which he was tried. In its instructions to the jury, the trial court repeatedly referred to intent as the gist of the offense charged, and of the necessity of finding beyond a reasonable doubt that

the appellant intentionally evaded or attempted to evade his income tax liability. The jury was instructed that wilful intent was an essential element of the proof of the crime charged, and that in order to justify a verdict of guilty, it was necessary to prove, not only that a false return had been filed, but that the appellant caused the return to be made with knowledge that it was fraudulent, and with the wilful intention of evading his obligation under the statute. But the jury was also told that every citizen was presumed to know the law, and that ignorance of the law was no excuse or justification for its violation in any particular.

We think it irreconcilably inconsistent to say in one breath that guilty knowledge of the consequences of the act done is the essence of the offense, and in the next breath say that ignorance of the consequences of those acts is no excuse. See Hargrove v. United States, supra; Annotation, 90 A.L.R. 1280. We are convinced that the appellant did not have a fair trial, and the judgment is reversed.

BRATTON, Circuit Judge (dissenting).

Section 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b), provides in presently material part that any person who wilfully attempts in any manner to evade or defeat any tax imposed by the chapter or the payment thereof shall be punished as therein specified. The word "wilfully" as therein used means done with wrongful intent or bad purpose as distinguished from mere inadvertence, oversight, or accident. United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381; Hargrove v. United States, 5 Cir., 67 F.2d 820, 90 A.L.R. 1276. Therefore a wilful intent to evade or defeat payment of income tax was one of the essential elements of the offense laid in the indictment which the government was required to prove in order to warrant a conviction of the defendant. United States v. Skidmore, 7 Cir., 123 F.2d 604, certiorari denied 315 U.S. 800, 62 S. Ct. 626, 86 L.Ed. 1201.

In adition to offering evidence relating to the income of the defendant during the year 1941, the government offered evidence tending to show that he evaded income taxes for the year 1939. That evidence was offered for the purpose of establishing intent or wilfulness in the effort to evade the taxes for the year 1941. The defendant had the right to offer admissible evidence tending to show that he acted without wrongful intent or wilfulness in connection with his income tax return for 1941. Some of the excluded testimony relating to his intent was admissible. But a critical examination of the record as a whole indicates clearly that at other stages of the trial virtually all of the evidence bearing upon the question was admitted. All of the evidence relating to the sale of the aged sheep, all of that relating to the deposit of the funds in the bank at Manzanola, all of that relating to the use of about $14,000 of such funds for the purchase of young sheep, all of that relating to the oversight of the defendant of the balance of $5000 still in the bank at the time of the making of the return, all of that relating to the disclosure of the facts to the expert who prepared the return, and all of that relating to the understanding that a supplemental return would be made, was admitted. The defendant testified to those facts himself, and he was permitted to prove on cross examination of two representatives of the Collector of Internal Revenue that he stated all of such facts to them in the course of interviews relating to his return for the year in question. In addition, the defendant testified that he told the representatives of the collector that he thought he was right in transferring from a bunch of aged ewes to a bunch of young ones; that if he had traded sheep it would have been all right; and that the way the matter was handled was just the same as a trade. And he further testified in sweeping language respecting all of the transactions involved that it never entered his mind to keep them out of his income tax return for the purpose of evading the payment of income tax. While the court may have improvidently sustained objections to questions which were properly asked as having a bearing upon the question of intent, at other stages of the trial the testimony was admitted and went to the jury, and therefore the action of the court in sustaining the objections to

990

which defendant points did not constitute prejudicial error.

From time to time in the course of discussion between the court and counsel, the court made some statements or comments with respect to the intent of the defendant as a defense to the charge laid in the indictment which I think were not entirely accurate statements of law. But in the formal instructions given to the jury, the court made it abundantly clear that a wilful intent to evade income taxes was an essential element of the crime charged, and that unless such element had been established the defendant should be acquitted. In view of the emphasis laid in the formal instructions upon wilful intent being an essential element of the offense which must be established beyond a reasonable doubt, I think there is no tenable basis for the contention that the statements of the court from time to time during the course of the introduction of evidence constituted prejudicial error.

I would affirm the judgment.