## KOEHLER et al. v. UNITED STATES.

### No. 13245.

United States Court of Appeals
Fifth Circuit.

May 25, 1951.

Rehearing Denied June 25, 1951.

Russell, Circuit Judge, dissented.

Elbert R. Jandt, Seguin, Tex., Ben F. Foster, San Antonio, Tex., for appellants.

Henry W. Moursund, U. S. Atty., Wm. H. Russell, Jr., Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before HOLMES, McCORD and RUSSELL, Circuit Judges.

McCORD, Circuit Judge.

Appellants, Bruno Koehler and Hugo Ackermann, were tried and convicted for violation of Section 242 of Title 18, U.S. C.A. and also of a conspiracy to violate that statute.[1]

---

1. Section 242 of Title 18, U.S.C.A. provides: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

The information upon which their prosecution was based alleges that the defendants entered into a conspiracy for the purpose of depriving one Efram Rasberry of his rights, privileges and immunities secured to him under the Constitution of the United States; namely, the right, privilege, or immunity to be secure in his person while in the custody of the State of Texas; the right, privilege and immunity not to be subjected to punishment without due process of law; the right, privilege and immunity not to be denied the equal protection of the laws of the State of Texas; the right and privilege to be immune while in the custody of persons acting under color of the laws of the State of Texas from illegal assault and battery by any person exercising the authority of said State; and the right and privilege to be tried by due process of law, and if found guilty, to be sentenced and punished in accordance with the laws of the State of Texas. It was thereafter alleged in the first count of the information that the object of the conspiracy of the defendant was to inflict illegal summary punishment upon Efram Rasberry, and that in furtherance of this conspiracy, the defendants committed certain overt acts.

The second count of the information charged that on or about August 23rd and August 24th, 1949, appellant, Bruno Koehler, a duly elected, qualified and acting constable of Guadalupe County, Texas, acting under color of the laws and statutes of the State of Texas, wilfully subjected and caused to be subjected Efram Rasberry, a resident of the State of Texas, to the deprivation of certain rights, privileges and immunities secured to him and protected by the Fourteenth Amendment to the Constitution of the United States. Appellant, Hugo W. Ackermann, was alleged to have wilfully aided, abetted and counseled Koehler in the commission of this offense.

Defendants, in answer, denied the allegations of both the conspiracy and substantive counts of the information, whereupon they were tried before a jury and found guilty on both counts. Upon conviction, the trial court set punishment for each of the defendants at a $500.00 fine, and six months in jail.

The principal questions confronting us for determination are (1) whether there is substantial evidence to support the verdict and sustain the convictions under both counts of the information; and (2) whether the trial court committed reversible error in refusing to grant defendants' requested instruction on circumstantial evidence, and in granting certain other charges which, it is claimed, were erroneous and prejudicial. Specifically, appellants deny there was sufficient evidence to justify a finding that they acted "under color of the laws and statutes of the State of Texas", or that they wilfully subjected Rasberry to any deprivation of his constitutional rights, privileges and immunities.

The evidence reveals that on the night of August 23, 1949, Efram Rasberry, accompanied by a minister by the name of Ernest Benzs, was traveling in an automobile toward Marion, Texas. When they arrived at a place called Cibolo Creek a number of hounds belonging to the appellant, Koehler, began to run across the highway. Rasberry, who was driving, slowed the car down, and one of the hounds was either hit by the car or ran into it. Afterwards, Rasberry and his companion, Benzs, proceeded on into the town of Marion, and were followed by appellants in an automobile. Appellants blew their siren, and stopped Rasberry's car, stating, "Didn't you know that I am the law?". Rasberry replied, "Yes, sir, Mr. Koehler, I know you are the law." Koehler then stated, "Get out of here, you are under arrest". Koehler then pulled Rasberry out of his car, after which both the appellants beat him with their fists or a club, while Rasberry's companion, Benzs, hid himself behind some bushes to escape being caught. Thereafter, appellants took Rasberry to a bar owned by Koehler in Marion, where he was held in custody without anyone being allowed to see him. While Rasberry was there the appellant, Ackermann, picked up a pet alligator owned by Koehler and kept in a washtub in the bar, and placed it against Rasberry's naked body. Koehler pointed a

pistol at Rasberry and told him to say his prayers; that if the dog Rasberry had hit with his car died, he (Koehler) was going to hang him, and that while he was hanging he would stay nearby with a gun, so nobody could cut him down.

Appellants later placed Rasberry in their car and drove over to the home of one Bob Miller. Koehler told Miller, "That is old Rasberry; he has been out with your daughter, running around with your daughter, and I am going to put him in jail, and I want you to take my gun and kill him", to which Miller replied, "No, I could do nothing like that". Koehler then stated, "You don't want to kill him he has been out with Herbert Butler's wife * * * if you haven't got any gun, come on over; I am going to put him in jail; come on over, and get my gun and kill him. He is running around with your daughter, and he has done run over my dogs, and if you don't kill him, I am going to kill him and her both in the morning, if those dogs die." Thereafter, appellants returned Rasberry to the jail at Marion, Texas, and the following day he was removed to the Guadalupe County jail.

The doctor who was called to examine Rasberry the day after he was beaten testified that at that time his head was swollen, that he had a cut on his lower lip and a cut on his forehead which required stitches, and that both lips were swollen and lacerated and he could not talk intelligibly. Rasberry testified that he was unconscious until the second day after the difficulty, at which time he was at his home in bed.

After he had placed Rasberry in jail, Koehler delivered to the local Justice of the Peace some unsworn complaints charging Rasberry with driving a motor vehicle without good brakes and without lights. The complaints were not filed with the court because they were not sworn to, and no other charges were ever filed or made against Rasberry.

■ We are of opinion there is substantial evidence to support the verdict as to the guilt of both appellants. Where, as here, an individual is apprehended by an officer of the law acting under color of his office,

and is badly beaten, intimidated and imprisoned without ever being taken before a committing magistrate or a tribunal which would afford him due process of law and preserve his constitutional rights, manifestly he has been deprived of his rights, privileges and immunities within the meaning of the statute. Title 18, U.S.C.A. Section 242; Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; Crews v. United States, 5 Cir., 160 F.2d 746; Williams v. United States, 341 U.S. 97, 71 S.Ct. 576. Moreover, the jury was warranted under the evidence adduced in finding that appellants acted wilfully, and that they intentionally subjected Rasberry to illegal and summary punishment without due process of law. In this connection, the language of this court in the case of Crews v. United States, 160 F.2d 746, at page 750, is particularly applicable here: "An officer of the law undoubtedly knows that a person arrested by him for an offense has the constitutional right to a trial under the law, and if the jury should believe from the evidence beyond a reasonable doubt that such an officer willfully failed to accord to one arrested by him the opportunity for such a trial but substituted instead his own trial by ordeal, such jury would be justified in finding that such a denial of such constitutional right was consciously and willfully made. One is generally presumed to have intended the normal and reasonable consequences of his acts."

■ There is abundant evidence to warrant the finding that appellants here acted "under color of the laws and statutes of the State of Texas". The use of the police siren while in pursuit of Rasberry, the statement to Rasberry, "Didn't you know that I am the law?", the action of appellants in placing Rasberry "under arrest" and lodging him in jail, as well as the delivery of the complaints charging him with defective brakes and lights, clearly support and warrant the inference of the jury that appellants acted "under color of law" in committing the offense charged. Furthermore, the evidence conclusively reveals that

Ackermann and Koehler were acting in concert in perpetrating the offense.[2]

■ We find no merit in the contention that the trial court erred in refusing to give defendants' requested instruction on circumstantial evidence. Here, the conviction did not depend solely on circumstantial evidence, and such charge was clearly erroneous. Cf. Bedell v. United States, 8 Cir., 78 F.2d 358; U. S. v. Skidmore, 7 Cir., 123 F.2d 604.

■ We further find no merit in the contention that the trial court committed reversible error in charging the jury that "the intent (of appellants) is presumed and inferred from the result of the action." The appellants interposed no objection to that portion of the charge now complained of, and the trial court may not now be put in error in this regard. Popham v. United States, 5 Cir., 11 F.2d 966. The record also reveals that after such statement, the trial court continued its charge: "The proof of a general intent to do Rasberry wrong is not sufficient, but a specific intent to deprive him of a Constitutional right is a burden the law casts upon the Government in this case. Neither color of law nor specific intent may be presumed by you gentlemen, but both color of law and specific intent must be proven by the government beyond a reasonable doubt". See Screws v. U. S., 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495.

We have carefully examined each and every assignment of error by appellants, and find them all, without exception, wholly without substance or merit. The charge of the trial court, viewed fully and fairly in its entirety, substantially preserved every right of appellants and every important issue in the case for the consideration of the jury.

We find no reversible error in the record, and the judgment is accordingly affirmed.

RUSSELL, Circuit Judge (dissenting).

Were it possible to adjudge the complaint of the defendants upon the basis alone of their moral right to assert it, as distinguish-ed from the legal rights which must be preserved to every person accused of crime, and if this moral question could be considered alone, without regard for legal precedent by which we are bound and which we may establish, the defendants' cause could be easily disposed of. But on the contrary, of course, we must be guided by legal principles. It is upon the application of these that a difference arises between me and my colleagues.

The defendants' assignment of error upon those portions of the charge of the Court which instructed the jury that in determining the question of intent it was the law that a person intended the usual consequences of his acts, and that intent is legally presumed and inferred from the result of the action, raises a question much more serious and fundamental than is presented by a merely erroneous charge in the usual criminal case.

The offense for which the defendants were being tried was for a charge of violation of 18 U.S.C. Section 242, with the additional charge of having conspired to do so. Thus, the question of "wilfulness" and "specific intent" must have been properly determined not merely to determine guilt, but also must have been established before there was, in legal and constitutional contemplation, any offense at all. This plainly results from the decision of the four majority justices in Screws v. United States, 325 U.S. 91, 101, 65 S.Ct. 1031, 89 L.Ed. 1495. Indeed, it is there stated that the failure of the trial Court to properly instruct the jury upon the question of intent was an error "so fundamental as not to submit to the jury the essential ingredients of the only offense on which the conviction could rest, (that) we think it is necessary to take note of it on our own motion. Even those guilty of the most heinous offenses are entitled to a fair trial." Screws v. United States, supra, 325 U.S. at page 107, 65 S.Ct. at page 1038. Consideration of the opinions of both the four majority justices and the three dissenting justices

2. On cross-examination, in reply to a question as to whether or not he was "assisting Mr. Koehler", appellant Ackermann answered, "Sure, I was assisting him." Ackermann later added, "I understood that I was supposed to work with Mr. Koehler".

leads inescapably to the conclusion that in no event can the statute which forms the basis of the present prosecution be constitutionally applied, unless the statutory term "wilfully" be strictly held an essential ingredient of the offense and to require that the offense be perpetrated with the specific intent and purpose to deprive another of a constitutional right. It is not sufficient that the defendants have "a generally bad purpose." The three dissenting justices in the Screws case were of the opinion that even with this application and construction the statute was unconstitutional. It is apparent, therefore, that the question here raised against the charge of the Court is, in essence, a constitutional question and goes to the vitals of the entire case.

In the present case, the trial Judge, in his charge, fairly and ably submitted to the jury the principles of law properly applicable in the determination by the jury of the existence of the essential ingredient of "wilfulness" as set forth above. However, the Court in immediate connection therewith, apparently overlooking at the moment the distinction generally between general intent and specific intent in criminal law, (and of special moment in the present case), charged the jury, in addition to the other means for proving intent that *"it is the law that a person intends the usual consequences of his acts,"* and further that "wrongful acts knowingly or intentionally committed can neither be justified or excused on the ground of innocent intent. The color of the act determines the complexion of the intent. The intent to injure or defraud is presumed when the unlawful act, which results in loss or injury, is proved to have been knowingly committed. *It is a well settled rule, which the law applies to both criminal and civil cases, that the intent is presumed and inferred from the result of the action."* (Italics supplied).

It is true that immediately following the last quoted language the Court instructed the jury of the requirements of a specific intent in the language set forth in the majority opinion. It seems clear, however, that for either, or both, of two reasons the unobjectionable portions of the charge did not remove the fatal taint inflicted by the language of the judge with reference to the intent legally presumed to follow from the commission of acts. Thus, even though the Court imposed the requirement of specific intent, the jury was, nevertheless, in effect told that it could be satisfied by the legal presumption resulting from the "action." With the evidence sufficient to show wholly unjustified and inhumane *acts* by the defendants the instruction was legally equivalent to the statement that if the defendants committed an unlawful *assault* upon Rasberry, this alone would furnish a legal presumption that the defendants had a deliberate and wilful purpose to deprive him of a constitutional right. This entirely misconceives, in the nature of the present case, the requirement that *the offense* be wilfully committed, that is, committed with specific intent. The Federal offense is not the unlawful assault, but the wilful deprivation of civil rights.[1] It is a well established rule of law that where wilfulness is an essential ingredient of an offense the specific intent must be proved as an independent fact and can not be presumed as a matter of law from the commission of an unlawful act. Hargrove v. United States, 5 Cir., 67 F.2d 820, 823, 90 A.L.R. 1276; Hubbard v. United States, 9 Cir., 79 F.2d 850, 853; 22 C.J.S., Criminal Law, §§ 32, 33, pp. 91, 92; Brill's Cyclopedia Criminal Law, Section 94. On the other reason, if the validity of the conclusion that the effect of the charge was to instruct the jury that the requisite specific intent could be established by the legal presumptions referred to could be validly questioned, which may not be logically done, still it must be said that the instructions are conflicting. They, therefore, must be legally held to have cancelled, each, the effect of the other, and there was no proper charge given on specific intent. Thus, in either view there was clearly a failure to properly instruct the jury upon

---

1. The statement in Crews v. United States, 5 Cir., 160 F.2d 746, 750 was not made in defining a legal instruction to the jury. It was the expression of the legal conclusion of the appellate Court upon consideration of the sufficiency of the evidence.

"the essential ingredients of the only offense on which the conviction could rest." This failure, under the ruling in the Screws case, supra, requires the grant of a new trial.

Rehearing Denied; Russell, Circuit Judge, dissenting