William L. BABB, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16558.

United States Court of Appeals
Fifth Circuit.

Feb. 25, 1958.

Rehearing Denied March 27, 1958.

John D. Cofer, G. Hume Cofer, Austin, Tex., for appellant.

John E. Banks, John R. Locke, Asst. U. S. Attys., Russell B. Wine, U. S. Atty., San Antonio, Tex., for appellee.

Before HUTCHESON, Chief Judge, and RIVES and JONES, Circuit Judges.

RIVES, Circuit Judge.

Appellant was convicted on five counts of an indictment brought under Section 545 of Title 18 United States Code.[1] He was sentenced to imprisonment for eighteen months and fined $1500.00. Each count charged that the appellant, on a certain specified date, fraudulently and knowingly concealed and facilitated the transportation and concealment of a certain number of Charolaise cattle, knowing the same to have been theretofore imported and brought into the United States contrary to law. Similar counts of a previous indictment against the ap-

---

1. Reading in part as follows:

"Whoever knowingly and willfully, with intent to defraud the United States, smuggles, or clandestinely introduces into the United States any merchandise which should have been invoiced, or makes out or passes, or attempts to pass, through the customhouse any false, forged, or fraudulent invoice, or other document or paper; or

"Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law—

"Shall be fined not more than $10,000 or imprisoned not more than five years, or both.

"Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section."

Title 18 United States Code § 545.

pellant had stopped at that point, and appellant's conviction under that indictment was reversed by this Court.

> "We hold that the indictment should have alleged some fact or facts showing that the cattle in question were imported or brought in contrary to some law;[3] and that it is not enough to say that they were imported or brought in 'contrary to law.'
>
> "[3]As was done in Gillespie v. United States, 2 Cir., 13 F.2d 736 and Estes v. United States, 8 Cir., 227 F. 818."

Babb v. United States, 5 Cir., 1955, 218 F.2d 538, 541.

To meet that holding, each count of the present indictment continued after the words "contrary to law" substantially as follows:

The defendant was a person importing and bringing such merchandise into the United States from a contiguous country, Mexico, otherwise than in a vessel or vehicle and defendant failed to immediately report his arrival to the Customs Officer at the nearest port of entry and failed to present the same to the Custom Officer for inspection, in violation of 19 U.S.C. § 1459;

And contrary to law in that:

The defendant was the consignee of the imported merchandise, and failed to make an entry thereof either in person or by an agent authorized in writing under prescribed regulations in violation of 19 U.S.C. § 1484.

After the evidence was closed, the district court required the Government to elect whether it would rely for conviction upon § 1459 or upon § 1484 of Title 19 United States Code and the Government elected to rely upon § 1484, the pertinent subsection (a) of which, in the months in 1953 during which the cattle were imported, provided in part:

> " * * * the consignee of imported merchandise shall make entry therefor either in person or by an agent authorized by him in writing under such regulations as the Secretary of the Treasury may prescribe. Such entry shall be made at the customhouse within forty-eight hours, exclusive of Sundays and holidays, after the entry of the importing vessel or report of the vehicle, or after the arrival at the port of destination in the case of merchandise transported in bond, unless the collector authorizes in writing a longer time."

Title 19 U.S.C.A. § 1484(a).[2]

The appellant makes no insistence that he was entitled to a judgment of acquittal on the ground of insufficiency of the evidence to prove that he fraudulently and knowingly concealed and facilitated the transportation of the cattle. Presented by various specifications of error are five principal contentions, thus stated in the appellant's brief:

> "(1) Defendant and appellant contends that the word 'consignee' as used in 19 U.S.C. 1484, and as used in the relevant counts of the indictment means a person as defined in 19 U.S.C. 1483,[3] and the defendant under the evidence and theory of the government in this case was merely looking after, guarding, and helping in transporting of the cattle to Louisiana, and that he was not the consignee as used and defined in the statute.
>
> * * * * * *
>
> "(2) Defendant and appellant contends that the provisions of 19 U.S. C. 1484, requiring a consignee to

---

2. An Act of August 8, 1953, c. 397, § 16 (b), 67 Stat. 509, 517, substituted "five days" for "forty-eight hours."

3. In pertinent part § 1483 reads:
 "For the purposes of this subtitle—
 "(1) All merchandise imported into the United States shall be held to be the property of the person to whom the same is consigned; and the holder of a bill of lading duly indorsed by the consignee therein named, or, if consigned to order, by the consignor shall be deemed the consignee thereof. * * *."
 Title 19 U.S.C.A. § 1483(1).

make an entry either in person or by an agent authorized in writing applies only to goods imported by 'vessel' or 'vehicle' or 'merchandise transported in bond,' and that a 'consignee' of merchandise imported 'otherwise than in a vessel or vehicle' is governed by 19 U.S.C. 1459,[4] as amended, and there being no evidence in this case that the cattle were imported into the United States by 'vessel' or 'vehicle' or 'in bond', there is no evidence that the consignee owed a duty to make an entry of said cattle as provided in Section 1484.

\* \* \* \* \* \*

"(3) The defendant's position is that there is no penalty prescribed for the failure to make an entry under 19 U.S.C. 1484 providing for a consignee to make an entry, and that 19 U.S.C. 1484 is not such a law, 'contrary' to which a prosecution may be supported under 18 U.S.C. 545.

\* \* \* \* \* \*

"(4) Defendant and appellant contends that the trial court should have dismissed this case, or abated the trial for a reasonable time, until the government paid the substantial court costs expended by the defendant on his former successful appeal in this case.

\* \* \* \* \*

"(5) Defendant and appellant contends that certain errors were committed by the Court in the charge to the jury in regard to: (a)

the definition of 'wilful' and 'unlawful'; (b) on the issue of knowledge of the provisions of the law as to requirement of an entry; and, (c) accomplice testimony."

1. With certain exceptions not material to this case, 19 U.S.C. § 1484(a) imposes upon the "consignee" of imported merchandise the duty to make entry therefor.

"\* \* \* In order to prevent frauds on the revenue through collusive transfers, and to save the government the trouble and inconvenience of hunting up the ultimate consignee, it has from the earliest acts been provided that an importation shall, for the purposes of the tariff acts, be deemed and held to be the property of the person to whom the same is consigned, \* \* \*."

25 C.J.S. Customs Duties § 97, p. 254.

 Appellant contends that the word "consignee" is limited and defined by 19 U.S.C.A. § 1483(1). See Footnote (3), supra. We do not agree. Clearly, that section itself implies that "all merchandise imported into the United States" has a consignee, even though in the usual and ordinary case the consignee is named in the bill of lading. Express provision for cases in which no bill of lading has been issued is contained in 19 U.S.C.A. § 1484(c), as follows:

"(c) The consignee shall produce the bill of lading at the time of making entry, except that—

"(1) If the collector is satisfied that no bill of lading has been issued,

---

4. § 1459 reads as follows:

"The master of any vessel of less than five net tons carrying merchandise and the person in charge of any vehicle arriving in the United States from contiguous country, shall immediately report his arrival to the customs officer at the port of entry or customhouse which shall be nearest to the place at which such vessel or vehicle shall cross the boundary line or shall enter the territorial waters of the United States, and if such vessel or vehicle have on board any merchandise, shall produce to such customs officer a manifest as required by law,

and no such vessel or vehicle shall proceed further inland nor shall discharge or land any merchandise, passengers, or baggage without receiving a permit therefor from such customs officer. Any person importing or bringing merchandise into the United States from a contiguous country otherwise than in a vessel or vehicle shall immediately report his arrival to the customs officer at the port of entry or customhouse which shall be nearest to the place at which he shall cross the boundary line and shall present such merchandise to such customs officer for inspection." Title 19 U.S.C.A. § 1459.

the shipping receipt or other evidence satisfactory to the collector may be accepted in lieu thereof * * * ."

■ Recognition of possession as such "other evidence" of the right to make entry is found in Customs Regulations (19 C.F.R. 8.6b) which provide:

"When merchandise is not imported by common carrier, possession of the merchandise at the time of arrival in the United States shall be deemed sufficient evidence of the right to make entry."

In its charge to the jury, the district court defined "consignee" as follows:

"You are instructed that by the word 'consignee' as used in this charge and in the indictment is meant a person connected with the unlawful importation, if said importation was unlawful, to whom, under the contract of shipment or sale, if there was a sale, the merchandise was to be delivered, who knowingly and wilfully received such merchandise, knowing that it had been unlawfully imported and that he owed the duty to make the entry."

Without implying that there was any error in that definition, if such an error did exist it was on the side of the defendant when it imposed on the Government the burden of proving that the defendant, as a consignee, was connected with the unlawful importation and received the cattle knowing that he owed the duty to make the entry.

There was substantial evidence that the defendant was the consignee of the cattle. They were imported into the United States from the ranch of one Henry Gilly near Pueblo, Mexico. No invoice, bill of lading, or other papers accompanied the cattle. No entry was made for them at any port of entry. They may have been imported by truck, but more probably they were waded across two hard bottomed crossings of the Rio Grande River near the ranch of the defendant's father. They were delivered to the defendant with instructions to keep and care for them for an indefinite period, "a year or two years, a few days, or what," and then deliver them to a Mr. Broussard. The defendant hauled the cattle by truck, or had them hauled, and delivered them to Broussard at his ranch in Louisiana. Under the testimony, the jury could properly find that the defendant was a "consignee" within the definition given by the court.

■ 2. We think also that the entry required to be made by the consignee by Section 1484 applies to merchandise imported from a contiguous country other than in a vessel or vehicle. The statute imposes a duty to make entry of merchandise upon every consignee thereof, and sets the time for making such entry in the usual case where the merchandise is brought in by vessel or vehicle.[5]

There was no necessity to amend Section 1484 when, in 1938, Sections 1459 and 1460 were amended to make them applicable to persons importing or bringing in merchandise from a contiguous country otherwise than in a vessel or vehicle. All three sections are under Subtitle IV, "Administrative Provisions", of Title 19, "Customs Duties." Sections 1459 and 1460 are under Part II of that Subtitle relating to "Report, Entry and Unlading of Vessels and Vehicles," while Section 1484 is under Part III relating to "Ascertainment, Collection, and Recovery of Duties." The report required by Sections 1459 and 1460 must be made immediately, while the entry required by Section 1484 may be made a considerable time after arrival of the merchandise in this Country. The two requirements are thus cumulative and apply at different stages of the importation.

■ 3. 18 U.S.C. § 545 carries its own penalty. See Footnote 1, supra.

---

5. That such has been the interpretation of the Bureau of Customs, see the regulations, 19 C.F.R. 8.3a, stating that, "entry, as required by Section 484(a), Tariff Act of 1930, as amended (19 U.S.C. 1484(a) ), shall be made of every importation whether free or dutiable, and regardless of value * * * ."

There is nothing to indicate that the term "contrary to law" as used in that section is limited to laws for the violation of which a penalty is imposed.

The appellant relies upon language used by this Court in Goldman v. United States, 1920, 263 F. 340, 343, and upon the opinion of the Eighth Circuit in Estes v. United States, 1915, 227 F. 818, 821, 822. In neither of those cases was it necessary to decide whether a law not itself carrying a penalty would come within the term "contrary to law" as used in Section 545.

It seems to us that the failure to make entry for the cattle as required by 19 U.S.C.A. § 1484(a) was a clear violation of law which comes within the usual and ordinary meaning of the words, "contrary to law." See 9 Words and Phrases, Contrary to Law, pages 359 et seq.; United States v. Chesbrough, D.C.N.J. 1910, 176 F. 778, 783.

Appellant argues also that the entry, as provided in Section 1484, can be made only after the importation is complete, citing United States v. Edwin S. Hartwell Lumber Co., 7 Cir., 1905, 142 F. 432, 436. Considering the purpose of the statute and the evil at which it is aimed, it seems clear to us that the fact that entry is not made until after the arrival of the merchandise in the United States does not keep such entry from being a part of the importation or bringing into the United States within the meaning of 18 U.S.C.A. § 545. See Brown v. Maryland, 12 Wheat. 419, 442, 25 U.S. 419, 442, 6 L.Ed. 678; United States v. Chesbrough, D.C.N.J.1910, 176 F. 778, 781, 782; State v. Harper, Tex.Civ.App. 1945, 188 S.W.2d 400, 402; Sheldon & Co. v. United States, 1917, 8 Ct.Cust.App. 215; Compare United States v. Lyman, 26 Fed.Cas. page 1024, No. 15,647; Perots v. United States, 19 Fed.Cas. page 258, No. 10,993.

■ 4. Of course, the district court did not err in refusing to abate the trial until the Government paid the court costs expended by the defendant on his former successful appeal, for those costs were not taxable against the United States. 28 U.S.C.A. § 2412(a).

■ 5. The court charged the jury as follows:

"The term 'wilfully' as used in the indictment means the doing of an unlawful act with knowledge that the act is unlawful, and with the intent to do the act. An act done through mistake of fact does not come within the meaning of the term 'wilfully' as used herein and in the indictment."

The defendant's objection overruled by the court was as follows:

"The defendant objects to the charge on the definition of 'wilfully' because the Court treats 'wilful' and 'unlawful' as synonymous. The Court should define 'wilful' as meaning done with intent and deliberately, and 'unlawful' as an act prohibited by law. The defendant objects to the Court's charge in this connection because nowhere in the Court's charge does the Court state the acts alleged to be a crime in this case must be unlawfully done, and does not define what is meant by the term 'unlawfully.'"

Obviously, the court did not treat "wilful" and "unlawful" as synonymous. The meaning of "unlawful" is so well understood, that the jury would hardly have been enlightened by defining it "as an act prohibited by law." If the defendant had felt such an instruction necessary, he should have requested it in writing, as required by Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A.

■ The court instructed the jury as follows:

"You are further instructed that the intent involved in the offenses charged in the several counts of the indictment in this case are not inherent in the acts themselves, but it is a specific intent involving a bad motive, and the specific intent on the part of the defendant to commit the acts charged in counts five through nine of the indictment. In order for you to convict the defendant Babb

708

of the offenses charged in said counts five through nine of the indictment in this case, you must first find beyond a reasonable doubt that he actually wilfully and knowingly was consignee of said merchandise alleged to have been imported in violation of the law, and that he failed to make entry thereof either in person or by an agent authorized by him in writing under the regulations prescribed by the Secretary of the Treasury, and that he knew that no one else authorized to do so had made such entry. It is not enough that he should have had suspicions or that he should have had reasonable grounds to believe that the entry on said cattle involved in this case was not duly made; but you must find from all of the evidence in this case that the defendant Babb actually knew that no entry had been made either by him or by any other authorized person."

The defendant made the following objection to the charge:

"The defendant objects to the Court's charge with reference to specific intent and knowledge, because the Court requires the jury to find only that the cattle involved in this case were imported into this country in violation of some law, and the Court should require the jury to find that the defendant knew they were brought into this country in violation of some specific law. In addition, the Court should charge that the jury must find that the defendant actually knew the provisions of the specific law contrary to which it is alleged that the cattle were imported. In other words, it should allege that he knew he was supposed to make an entry and that he knew he was required to present them for inspection."

For this objection, appellant relies upon Hargrove v. United States, 5 Cir., 1933, 67 F.2d 820, 823, 90 A.L.R. 1276, and Yarborough v. United States, 4 Cir., 1956, 230 F.2d 56, 61. As has been observed, however, in defining "consignee" the court required the Government to prove that the defendant knew "that he owed the duty to make the entry." Other parts of the charge emphasized that requirement. We do not understand that the principle announced in the Hargrove and the Yarborough cases goes further so as to require actual knowledge of the provisions of a specific law. See 22 C.J.S. Criminal Law § 48; 1 Bishop on Criminal Law, 6th ed., § 297, p. 166; 1 Wharton on Criminal Law, 8th ed., § 85a, p. 113; compare Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L. Ed. 288; 14 Am.Jur. Criminal Law, § 24.

■ The court charged the jury that one of the Government witnesses, Trevino, was an accomplice witness, and that the evidence raised an issue as to whether four other named Government witnesses were accomplice witnesses. The court further charged:

"You are hereby instructed that if you believe the said witnesses, * * or either of them, are accomplice witnesses, as that term is defined for you in the Court's charge, or have a reasonable doubt thereof, then you shall take and consider the testimony of such witness or witnesses as you may believe to be accomplices, or have a reasonable doubt thereof, with caution. It is not necessary that their testimony be corroborated, but I charge you that their testimony is to be received with caution by you and you should not accept it unless, in your opinion, it so harmonizes with the other evidence in the case as to leave in your mind no reasonable doubt of its truth.

"I hereby instruct you, that as to the witness Trevino, as I have heretofore stated, he is an accomplice witness and you shall consider the testimony of the said Trevino with caution."

Defendant objected to the charge because it did not include the following: "That said testimony, if said witnesses are found to be accomplice witnesses,

should be considered with suspicion and great care and caution." [6]

It is too clear for argument that the charge on accomplice testimony as given was sufficient. Lyles v. United States, 5 Cir., 249 F.2d 744; Phelps v. United States, 5 Cir., 252 F.2d 49.

We find no reversible error in the record, and the judgment is

Affirmed.

---

6. In support of this contention, appellant cites: Fletcher v. United States, 1946, 81 U.S.App.D.C. 306, 158 F.2d 321; West v. United States, 5 Cir., 1940, 113 F.2d 68; Lett v. United States, 8 Cir., 1926, 15 F.2d 686; Egan v. United States, 1923, 52 App.D.C. 384, 287 F. 958; Freed v. United States, 1920, 49 App.D.C. 392, 266 F. 1012; State v. Williams, Mo.App.1924, 266 S.W. 484; 2 Wharton's Crim. Evidence, 12th ed., § 445, p. 223; 1 Underhill's Crim. Evidence, 5th ed., § 181, p. 376.